UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------

JOE HAND PROMOTIONS, INC., as Broadcast
Licensee of the June 11, 2005 Tyson/McBride
Program and the June 25, 2005 Gatti/Mayweather
Program,

                    Plaintiff,

-against-

OUSMANE FOFANE, et al.,

                    Defendants.

--------------------------------------------------------------

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 8/9/07 |

06 Civ. 2099 (RJH)

**ORDER**

      Having received and reviewed the Report and Recommendation ("Report") of Magistrate

Judge Henry Pitman **[18]**, and having received no objections to said report, this Court hereby

accepts and adopts Magistrate Judge Pitman's proposed findings of fact in full, and accepts and

adopts his proposed rulings of law with the exception of those relating to the calculation of

damages.

      The Court calculates damages using the following formula initially adopted by Judge

Harold Baer: $50 per patron (under § 605(a)), plus $1,000 per violation (under

§ 605(e)(3)(C)(i)(II)), plus attorney's fees and costs. *See Kingvision v. Las Copas Bar*

*Restaurant Pizzeria, Inc.*, 05 Civ. 10203 (LBS)(DFE), 2006 U.S. Dist. LEXIS 65687, at \*6

(S.D.N.Y. Aug. 11, 2006). In this instance, investigation uncovered thirty customers watching a

pirated program on June 11 and thirty customers watching a pirated program on June 25.

(Report ¶¶ 9, 15.) Therefore, plaintiff is entitled to $5,000 in statutory damages. The Court also

adopts the Report's recommendation that plaintiff not be awarded attorneys' fees in this action

because plaintiff has not submitted contemporaneous time records. (Report ¶ 30.) In addition,

the Court agrees with Judge Pitman that investigative fees are not recoverable in this context; neither 28 U.S.C. § 1920 nor 47 U.S.C. § 605(e)(3)(B)(ii) expressly provide for an award of investigative fees and courts in this jurisdiction have declined to award such fees in similar circumstances. *(See* Report ¶ 31); *J & J Sports Prods. v. Schrader Rest. Corp.*, 485 F. Supp. 2d 422, 424 (S.D.N.Y. 2007) (citing cases).

For the foregoing reasons, plaintiff is awarded judgment in the amount of $5,000.00. The Clerk of the Court is hereby directed to close the case.

SO ORDERED.

Dated: New York, New York
     August 8, 2007

Richard J. Holwell
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x



JOE HAND PROMOTIONS, INC.,                    :
as Broadcast Licensee of the
June 11, 2005 TYSON/MCBRIDE               :
Program and the June 25, 2005
GATTI/MAYWEATHER Program,                  :

                        Plaintiff,    :    06 Civ. 2099 (RJH)(HBP)

        -against-                          :    REPORT AND
                                                RECOMMENDATION
OUSMANE FOFANA, individually and         :
as officer, director, shareholder
and/or principal of NEW RESTAURANT :
BON APETIT CORP., d/b/a RESTAURANT
BON APETIT; NEW RESTAURANT BON         :
APETIT CORP. d/b/a RESTAURANT
BON APETIT,                                 :

                        Defendants.    :

------------------------------------X


                PITMAN, United States Magistrate Judge:

                TO THE HONORABLE RICHARD J. HOLWELL, United States

District Judge,

I.  Introduction

                On December 18, 2006, the Honorable Richard J. Holwell,

United States District Judge for the Southern District of New

York, referred this matter to me to conduct an inquest concerning

plaintiff's damages as to defendants Ousmane Fofana and New

Restaurant Bon Apetit Corp. (collectively, the "Defaulting

Defendants"), and to issue a report and recommendation concerning plaintiff's damages as to the Defaulting Defendants.

Pursuant to the Order of Reference, I issued a Scheduling Order on January 25, 2007 directing plaintiff to serve and file proposed findings of fact and conclusions of law by March 26, 2007 and directing the Defaulting Defendants to submit responsive materials by April 26, 2007. My January 25, 2007 Scheduling Order further provided:

> Defendants shall submit their responses  to plaintiff's submissions, if any, no later than April 26, 2007. IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY April 26, 2007 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in a default judgment.")

(Emphasis in original).

On or about March 26, 2007, plaintiff submitted its proposed findings of fact and conclusions of law and other materials in support of its application for a default judgment against the Defaulting Defendants.

Copies of my January 25, 2007 Scheduling Order were sent to both of the Defaulting Defendants at the addresses at which they were served; the copy sent to New Restaurant Bon

Apetit has been returned by the Postal Service as undeliverable. Since I have no other information concerning the whereabouts of this defendant, I have no other way of providing notice to it. Neither of the Defaulting Defendants has made any written submission to me, nor have either of the Defaulting Defendants contacted my chambers in any way. Accordingly, on the basis of plaintiff's written submissions alone, I recommend that the Court make the following findings of fact and conclusions of law.

## II. Findings of Fact

### A. The Parties

1. The plaintiff, Joe Hand Promotions, Inc., is a Pennsylvania Corporation with its principal place of business located at 407 East Pennsylvania Boulevard, Feasterville, Pennsylvania 19053 (Complaint ¶ 5[1]).

2. The defendant, Ousmane Fofana, is the principal of New Restaurant Bon Apetit Corp. d/b/a Restaurant Bon Apetit, is doing business as New Restaurant Bon Apetit Corp. d/b/a Restau-

---

[1]As a result of Defaulting Defendants' default, all the allegations of the Complaint as to them, except as to the amount of damages, must be taken as true. Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v. Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).

rant Bon Apetit, and was the individual with supervisory capacity and control over the activities occurring within the Restaurant Bon Apetit (the "Establishment") on June 11, 2005 and June 25, 2005 (Complaint ¶¶ 7, 8).

3. The defendant, New Restaurant Bon Apetit Corp. d/b/a Restaurant Bon Apetit, is a business entity, the exact nature of which is unknown, having its principal place of business at 46 St. Nicholas Avenue, New York, New York 10026 (Complaint ¶ 10).

B. Plaintiff's Business and
the Defaulting Defendants'
Illegal Interception of
Cable Television Programming

4. By contract, plaintiff, Joe Hand Promotions, Inc., was granted the right to distribute telecasts of a boxing match between Mike Tyson and Kevin McBride, including all undercard or preliminary bouts, scheduled for June 11, 2005 (the "June 11th Program"), via closed circuit television and encrypted satellite signal. The June 11th Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal (Complaint ¶ 15).

5. Pursuant to the contract, plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to exhibit the June 11th Program to their patrons (Complaint ¶ 16).

4

6.    Plaintiff expended substantial money to transmit the June 11th Program to those entities in the State of New York which had entered into agreements with plaintiff to exhibit the June 11th Program to their patrons (Complaint ¶ 17).

7.    With full knowledge that the June 11th Program was not to be received and exhibited by entities unauthorized to do so, the defendants and/or their agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled the satellite signals by which the June 11th Program was trans-mitted and did exhibit the June 11th Program at the Establishment willfully and for purposes of direct or indirect commercial advantage or private financial gain (Complaint ¶ 18).

8.    The Defaulting Defendants and/or their agents, servants, workmen and employees used an illegal satellite re-ceiver, intercepted plaintiff's signal and/or used an illegal cable converter box or device to intercept plaintiff's broadcast of the June 11th Program, which originated via satellite uplink and was then re-transmitted via satellite or microwave signal to various cable and satellite systems (Complaint ¶ 19).

9.    At the time the June 11th Program was broadcast over plaintiff's system, an investigator hired by plaintiff visited the Restaurant Bon Appetit, located at 46 St. Nicholas Avenue, New York, New York.  The investigator was at the premises for approximately seven minutes and during that time he observed

5

30 patrons on the premises and one television set displaying the June 11th Program (Affidavit of Edgardo Rodriguez, sworn to June 20, 2005).

10.   Also by contract, plaintiff, Joe Hand Promotions, Inc., was granted the right to distribute telecasts of a boxing match between Arturo Gatti and Floyd Mayweather, including all undercard or preliminary bouts, scheduled for June 25, 2005 (the "June 25th Program"), via closed circuit television and encrypted satellite signal.  The June 25th Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal (Complaint ¶ 26).

11.   Pursuant to the contract, plaintiff entered into subsequent agreements with various entities in the State of New York, allowing them to exhibit the June 25th Program to their patrons (Complaint ¶ 27).

12.   Plaintiff expended substantial money to transmit the June 25th Program to those entities in the State of New York which had entered into agreements with plaintiff to exhibit the June 25th Program to their patrons (Complaint ¶ 28).

13.   With full knowledge that the June 25th Program was not to be received and exhibited by entities unauthorized to do so, the defendants and/or their agents, servants, workmen or employees unlawfully intercepted, received and/or de-scrambled the satellite signals by which the June 11th Program was trans-

6

mitted and did exhibit the June 25th Program at the Establishment willfully and for purposes of direct or indirect commercial advantage or private financial gain (Complaint ¶ 29).

14.   The Defaulting Defendants and/or their agents, servants, workmen and employees used an illegal satellite receiver, intercepted plaintiff's signal and/or used an illegal cable converter box or device to intercept plaintiff's broadcast of the June 25th Program, which originated via satellite uplink and was then re-transmitted via satellite or microwave signal to various cable and satellite systems (Complaint ¶ 30).

15.   At the time the June 25th Program was broadcast over plaintiff's system, an investigator hired by plaintiff visited the Restaurant Bon Appetit, located at 46 St. Nicholas Avenue, New York, New York.   The investigator was at the premises for approximately six minutes and during that time he observed 30 patrons on the premises and one television set displaying the June 25th Program (Affidavit of Richard Rodriguez, sworn to July 2, 2005).

16.   Apart from the information set forth in Paragraphs 13 & 19 above, plaintiff has provided no evidence concerning the extent to which the Defaulting Defendants derived economic benefit from their illegal interception of the June 11th Program and the June 25th Program (collectively, the "Programs").

7

17. The aggregate investigative cost incurred by plaintiff with respect to the interceptions was $700 (Affidavit of Joe Hand, Jr., sworn to June, 13, 2006, ¶ 10).

18. Plaintiff has submitted an affidavit and contemporaneous time records indicating that it incurred the following fees in prosecuting this action:

Attorney Time: 5.12 hrs @ $200/hr = $1024.00

Paralegal Time: 3.00 hrs @ $75/hr = $225.00

(Affidavit of Julie C. Lonstein, Esq., sworn to December 6, 2006 ("Lonstein Aff.") ¶¶ 3-4).

19. In addition to the foregoing legal fees, plaintiff has also incurred a fee for the service of process totaling $200.00 (Lonstein Aff. ¶ 3).[2]

III. Conclusions of Law

20. This action arises under 47 U.S.C. §§ 553 and 605. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is properly established in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

21. The facts set forth in the affidavits submitted by plaintiff along with the uncontroverted allegations of the

---

[2]Plaintiff also seeks to recover its filing fee of $350.00 (Lonstein Aff. ¶ 3). The filing fee is ordinarily added to the judgment by the Judgment Clerk as a taxable cost as a matter of course. Adding the filing fee at this stage creates an unnecessary risk that the fee will be assessed twice.

8

complaint, taken together with all the reasonable inferences that can be drawn therefrom, Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981), demonstrate that the Defaulting Defendants have engaged in the unauthorized reception of the plaintiff's cable television programming in violation of Sections 553(a)(1) and 605(a) of the Communications Act, 47 U.S.C. §§ 553(a)(1) and 605(a).[3]

22. Sections 553(a)(1) and 605(a) of the Communications Act both prohibit the unauthorized reception of any cable television programming services which originate as satellite-delivered "radio communications." Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 434-35 (2d Cir. 2002); Int'l Cablevision, Inc. v. Sykes & Noel, 75 F.3d 123, 133 (2d Cir. 1996). See also Time Warner Cable of N.Y. City v. Taco Rapido Rest., 988 F. Supp. 107, 110-11 (E.D.N.Y. 1997); Cablevision Sys. Corp. v. Muneyyirci, 876 F. Supp. 415, 424-25 (E.D.N.Y. 1994). Since at least part of the Programs' transmissions were accomplished by satellite, the Defaulting Defendants' interceptions of the Programs violate 47 U.S.C. §§ 553(a)(1) and 605(a). Cmty. Television Sys., Inc. v. Caruso, supra, 284 F.3d at 434-35; Int'l Cablevision, Inc. v. Sykes & Noel, supra, 75 F.3d at 131, n.4.

---

[3]Plaintiff alleged a violation 47 U.S.C. §605(e)(4) in Count III of its Complaint, but omitted this claim from its Proposed Findings of Fact and Conclusions of Law, submitted in response to my January 25, 2007 Scheduling Order. Accordingly, I deem this claim to be abandoned.

9

23.  As a party possessing "proprietary rights" in the
communications which the Defaulting Defendants intercepted,
plaintiff is an "aggrieved person" and thereby authorized to
bring this civil action against the Defaulting Defendants pursu-
ant to 47 U.S.C. §§ 553(c)(2) and 605(e)(3)(a).  In accordance
with its statutory rights under 47 U.S.C. §§ 553(c)(3)(A) and
605(e)(3)(C)(i), plaintiff has elected to recover money damages
against the Defaulting Defendants for their violations of 47
U.S.C. §§ 553(a)(1) and 605(a) in the form of statutory damages,
as opposed to actual damages.  The Defaulting Defendants' default
has prevented plaintiff from discovering the financial benefits
actually derived from the Defaulting Defendants' unauthorized
receptions of the Programs.

24.  Although defendant's conduct has violated both
Sections 553 and 605, plaintiff has elected to recover damages
under Section 605 only (Plaintiff's Proposed Findings of Fact and
Conclusions of Law at 5).  The range of statutory damages for a
violation of section 605(a) is $1,000.00 through $10,000.00,
except in cases where the violation occurred for direct or
indirect commercial advantage or private financial gain.  47
U.S.C. § 605(e)(3)(C)(i)(II).  Where the violation did occur for
purposes of commercial advantage or private financial gain, "the
court in its discretion, may increase the award of damages,
whether actual or statutory, by an amount of not more than

10

$100,000 for each violation . . . ." 47 U.S.C. §
605(e)(3)(C)(ii).

25.   Plaintiff seeks $110,000 in statutory damages from
the Defaulting Defendants for the interceptions of the Programs,
on the theory that the Defaulting Defendants intercepted the
Programs illegally for "commercial advantage and private
financial gain." Although I agree with plaintiff that the
Defaulting Defendants did intercept the Programs for the illicit
purposes cited by plaintiff, I also believe that an award of the
theoretical[4] maximum statutory damages is unwarranted here. In
determining whether to award enhanced damages under 47 U.S.C. §
605(e)(3)(C)(ii), courts consider such factors as whether there
is evidence of "repeated violations over an extended period of
time; substantial unlawful monetary gains; significant actual
damages to plaintiff; defendant's advertising for the intended
broadcast of the event; defendant's charging a cover charge or
charging premiums for food and drinks." Kingvision Pay-Per-View,
Ltd. v. El Rey Del Bistec y Caridad, Inc., 01 Civ. 6562 (SHS),

_____

[4]Plaintiff arrives at the $110,000 figures by adding the
maximum amount of statutory damages recoverable under Section
605(e)(3)(C)(i)(II) to the maximum amount recoverable under
Section 605 (e)(3)(C)(ii). It is not clear whether this
aggregation of statutory damages is permissible. Plaintiff cites
no authority addressing the issue and my own research has not
disclosed any cases addressing the question. Since I recommend
that the amount to be awarded against the Defaulting Defendants
is substantially less than $110,000, I need not resolve this
issue.

11

2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001); see also Home Box
Office v. Champs of New Haven Inc., 837 F. Supp. 480, 484 (D.
Conn. 1993). Although the Defaulting Defendants' interceptions
of the Programs were illegal, it appears from the information
submitted by plaintiff that the Defaulting Defendants' uses of
the Programs were limited. There is no evidence that the
Restaurant Bon Appetit imposed a cover charge or admission fee to
view either of the Programs, and, thus it does not appear that
the Defaulting Defendants tried to sell Plaintiff's intangible
property. Nor is there evidence that the Defaulting Defendants
advertised for the intended broadcast of the Programs, charged
premiums for food and drinks during the display of the Programs,
or received a substantial unlawful monetary gain. Lastly, there
is no evidence that the Defaulting Defendants are repeat
offenders.[5] Based on these factors, the most compelling
inference is that the Restaurant Bon Appetit illegally
intercepted and displayed the Programs in order to induce

---

[5]Plaintiff alleges in its Proposed Findings of Fact and
Conclusions of Law that the Defaulting Defendants engaged in the
unauthorized interception of two other broadcasts from those at
issue here -- specifically, a September 18, 2004 program and a
May 14, 2005 program broadcast by entities not named in this
action. In support of this assertion, plaintiff offers the
affidavits of a private investigator stating that he observed the
Restaurant Bon Appetit exhibiting the September 18, 2004 and May
14, 2005 programs. Plaintiff fails to offer, however, any
evidence to support its contention that the display of these
programs was unauthorized. Accordingly, I decline to make a
finding of recidivism based on this evidence.

12

customers to patronize the Establishment and thereby increase the sale of food and drink.

26. As Magistrate Judge Ellis has pointed out in Kingvision Pay-Per-View, Ltd. v. Recio, 02 Civ. 6583 (JSM)(RLE), 2003 WL 21383826 at *4 (S.D.N.Y. June 11, 2003):

> Courts have developed two approaches for determining statutory damages under § 605. One approach is to calculate the award of damages by the number of patrons in the establishment at the time of the violation. See Taco Rapido Restaurant, 988 F.Supp. at 111 (court awarded $50 per patron); Googies Luncheonette, 77 F. Supp.2d at 490 (court awarded $60 per patron). Another approach is to award a flat sum for damages. See Kingvision Pay-Per-View, Ltd., v. Jasper Grocery, 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001) (court awarded $5,000); 2182 La Caridad Rest., Inc., 2002 WL 654137 at *3 (court awarded $3,400).

See also Kingvision Pay-Per-View, Ltd. v. El Rey Bistec y Caridad, Inc., 01 Civ. 6562 (SHS), 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001). I conclude that statutory damages should be assessed based on the number of patrons in the Establishment while each of the Programs was displayed. I shall assume that each patron purchased an average of $250 worth of food and drink as a result of his or her being in the establishment while each Program was being intercepted. Although this premise assumes a relatively high level of consumption, it will ensure that all of the Defaulting Defendants' profits are disgorged and, thereby, discourage the Defaulting Defendants and others from engaging in similar acts of cable piracy in the future. See generally New Contenders, Inc. v. Diaz Seafood,

13

Corp., 96 Civ. 4701 (AGS)(HBP), 1997 WL 538827 at *2 (S.D.N.Y.
Sept. 2, 1997) (approving award of statutory damages assessed at
a rate of $300 per patron). Although this assumption is, to some
extent, speculative, some speculation with respect to damages is
permissible where, as here, a defendant's default has prevented
damages from being computed with greater certainty. Katz
Communications, Inc. v. Evening News Assoc., 705 F.2d 20, 25 (2d
Cir. 1983) (where the wrongdoer's conduct makes it impossible to
ascertain damages with certainty, the court may resort to
"reasonable conjectures and probable estimates to make the best
approximation possible" (citation and internal quotation marks
omitted)).

        27.   Applying this methodology with respect to each of
the Programs displayed at the Establishment yields the following
results.

June 11th, 2005 Program

30 patrons x $250/patron = $7,500

June 25th, 2005 Program

30 patrons x $250/patron = $7,500

        28.   Given the defaults of the individual Defaulting
Defendants and the consequence that all allegations against them
are deemed to be true, I also conclude that they are both
responsible for the interception that occurred at the
Establishment and that the individual Defaulting Defendants are,

                                  14

therefore, jointly and severally liable for the damages recoverable with respect to this establishment. Kingvision Pay-Per-View, Ltd. v. Recio, supra, 2003 WL 21383826 at *4.

29.  Section 605(e)(3)(B)(iii) of Title 47 requires a court to award to "an aggrieved party who prevails" the costs and reasonable attorneys' fees which it incurred in prosecuting its claims to judgment. In the Second Circuit, however, a party seeking to recover attorney's fees must submit contemporaneous time records that show "for each attorney, the date, the hours expended and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983). Transcriptions of contemporaneous time records containing the above information have been found to satisfy this requirement. See e.g. Cruz v. Local Union No. 3, IBEW, 34 F.3d 1148 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); Johnson v. Kay, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied."); Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) ("The Court routinely

15

receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers" as "a form convenient for the Court."). "Attorneys' fees applications that do not contain such supporting data[, however] 'should normally be disallowed.'" Cablevision Sys. N.Y. City Corp. v. Diaz, 01 Civ. 4340 (GEL)(FM), 2002 WL 31045855 at *5 (July 10, 2002), quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1154, and citing Kingvision Pay-Per-View v. The Body Shop, 00 Civ. 1089 (LTS), 2002 WL 393091 at *5 (S.D.N.Y. Mar. 13, 2002).

          30.   Here, plaintiff has not submitted contemporaneous time records. Instead, plaintiff's papers include an affidavit listing attorney or paralegal, date, number of hours, description of work, and an hourly rate. Plaintiff's papers provide no indication, however, that the summary of hours expended was produced based on a compilation of contemporaneous time records. Accordingly, I respectfully recommend that plaintiff not be awarded attorneys' fees in this action.

          31.   Plaintiff also seeks to recover its investigative fees of $700. An award of investigative fees is not appropriate here. First, it is not clear that investigative costs may be awarded in this context; neither 28 U.S.C. § 1920 nor 47 U.S.C. § 605(e)(3)(B)(iii) expressly provides for the award of investigative fees and courts in this jurisdiction have declined

to award investigative fees in similar circumstances.  See e.g.
Garden City Boxing Club v. Mendez, 05 Civ. 10001 (RMB)(AJP), 2006
WL 1716909 at *2 (S.D.N.Y. June 16, 2006) (declining to follow
magistrate judge's recommendation regarding award of
investigator's fees); Kingvision Pay-Per-View Ltd. v. Cardona, 03
Civ. 3839 (GDB)(FM), 2004 WL 1490224 at *4 (S.D.N.Y. June 30,
2004) (Report & Recommendation) (denying request for recovery of
investigator's fees and stating that "[t]here is no provision for
a prevailing party to be awarded the cost of its investigator");
Joe Hand Promotions, Inc. v. Soto, 01 Civ. 0329 (GBD)(AJP), 2003
WL 22962810, at *2 (S.D.N.Y. Dec. 17, 2003) ("there is no
authority to award 'investigative fees' as costs").  Second,
assuming without deciding that investigative costs may be awarded
under 47 U.S.C. § 605(e)(3)(B)(iii)'s provision for "full costs,"
see Kingvision Pay-Per-View Ltd. v. Autar, 426 F.Supp.2d 59, 66-
69 (E.D.N.Y. 2006), the evidence provided by plaintiff, an
affidavit statement by plaintiff's President Mr. Joe Hand, Jr.
that plaintiff paid $700 for investigative services, is
insufficient to establish the time expended by the investigator
and the reasonableness of the investigator's fees (Affidavit of
Joe Hand, Jr., sworn to June, 13, 2006, ¶ 10).[6]  See Int'l

_____

[6]Although Mr. Hand's affidavit states that invoices from the
investigative firm in connection with its services are attached
as Exhibit E to the affidavit, no such documents were included in
plaintiff's submissions to the Court and there was no "Exhibit E"
(continued...)

Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997)
("a request for investigative fees pursuant to §
605(e)(3)(B)(iii) should be subject to the same level of scrutiny
to which requests for attorneys' fees are subjected;" thus
requiring a plaintiff to document "(1) the amount of time
necessary for the investigation; (2) how much the investigators
charged per hour; [and] (3) why the investigators are qualified
to demand the requested rate."). Plaintiff's affidavit provides
none of the required information; accordingly, I respectfully
recommended that plaintiff's request for investigative fees be
denied in its entirety.

32. Finally, plaintiff's complaint also sought an
injunction (Compl. ¶¶ 48-49). Since the propriety of injunctive
relief is beyond the scope of the reference, I make no
recommendation concerning the propriety of injunctive relief,
although I note that such relief is ordinarily appropriate in a
case such as this.

IV. Conclusion

Accordingly, for all the foregoing reasons, I
respectfully recommend that damages be assessed against

---

$^{6}$(...continued)
attached to Mr. Hand's affidavit (Affidavit of Joe Hand, Jr.,
sworn to June, 13, 2006, ¶ 10).

18

Defaulting Defendants Ousmane Fofana and New Restaurant Bon Apetit Corp., jointly and severally, in the amount of $16,449.00.

## V. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell, United States District Judge, 500 Pearl Street, Room 1950, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Holwell. FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

19

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         May 30, 2007

                                        Respectfully submitted,

                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies mailed to:

Julie Cogen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace hill
P.O. Box 351
Elleville, New York   12428

Ousmane Fofana
2 West 111 Street, Apt. 3D
New York, New York 10026

New Restaurant Bon Apetit Corp.
46 St. Nicholas Avenue
New York, New York 10026